173 P.3d 453

Kristina HIGGINS, a single woman, Plaintiff/Appellee,

v.

ASSMANN ELECTRONICS, INC., an Arizona corporation, Defendant/Appellant.

Kristina Higgins, a single woman, Plaintiff/Appellee,

v.

Assmann Electronics, Inc., an Arizona corporation; Hans Ulrich Meyer, Defendants/Appellants.

Nos. 1 CA–CV 06–0266, 1 CA–CV 06–0332.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 13, 2007.

Review Denied April 22, 2008.

Law Offices of Sidney T. Marable, PLC By Sidney T. Marable, Jerome L. Froimson, Phoenix, Attorneys for Plaintiff–Appellee.

Gammage & Burnham, PLLC By Richard K. Mahrle, Michella Abner, Phoenix, Attorneys for Defendant–Appellant Assmann.

Francis G. Fanning, Tempe, Attorney for Defendant–Appellant Meyer.

## OPINION

THOMPSON, Judge.

¶ 1 Assmann Electronics, Inc. (Assmann) and Hans Ulrich Meyer (Meyer) appeal from a jury verdict in favor of Kristina Higgins (Higgins) on her claims for assault against Meyer and wrongful termination against both Assmann and Meyer. For the reasons stated below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Meyer was vice president and chief executive officer of Assmann, a German company. Meyer was Assmann's highest ranking officer in the United States. He was also Higgins's supervisor. Meyer and Higgins had a consensual sexual relationship that had terminated by the time of the relevant events. On Labor Day, September 1, 2003, Meyer attempted to contact Higgins at her home. Getting no response, he went to her apartment and knocked on the door. No one answered, so he entered uninvited and discovered Higgins and her male companion dressed only in bath towels. Meyer became enraged and attacked Higgins's companion. He also assaulted Higgins. Meyer threw Higgins out the front door where her towel came off and she hit a wall. Meyer then punched Higgins. During this assault, Meyer told Higgins she was fired.

¶ 3 Higgins called the police. Meyer attempted to call Higgins after the assault, but the police answered her phone and spoke with Meyer. The following day Higgins's company cell phone was disconnected. Higgins did not return to work, but on September 3rd she went to the office with a police escort to collect her personal belongings.

¶ 4 On September 4th, Duane Skinner (Skinner), Assmann's chief financial officer and attorney, wrote Higgins asking to meet with her. On September 8th, Higgins called Skinner asking for her last paycheck and her passport. Skinner returned these items accompanied with a letter that did not state that it was her last paycheck. Skinner ultimately wrote Higgins on September 26th, informing her that her employment was terminated and that her work visa had therefore expired.

¶ 5 Higgins filed a complaint against Meyer and Assmann alleging several claims.[1] The parties went to trial on an assault claim against Meyer and wrongful termination claim against Meyer and Assmann. The jury returned a verdict in favor of Higgins on both counts, awarding her $300,000 for the assault and $300,000 against Meyer and $400,000 against Assmann on the wrongful termination claim.

¶ 6 Meyer and Assmann filed motions for new trial regarding the wrongful termination verdict. The trial court ruled that the liability for wrongful termination was joint and several, and vacated the $400,000 verdict against Assmann, holding the defendants jointly and severally liable for $300,000. Both defendants timely appealed.

## DISCUSSION

¶ 7 Both defendants challenge the judgment on Higgins's wrongful termination claim. Meyer asserts that as a supervisor and not Higgins's employer, he cannot be personally liable for wrongful termination as a matter of law, and he objects to the admission of evidence of a prior altercation with co-workers. Assmann argues that the jury instruction for wrongful termination was er-

---

1. Higgins's complaint stated claims against Meyer for endangerment and assault. She alleged both defendants were liable for intentional infliction of emotional distress, wrongful termination, constructive discharge, and punitive damages. Higgins subsequently dismissed the endangerment, intentional infliction of emotional distress, and punitive damages claims.

roneous because it included physical and emotional damages that were not caused by the wrongful termination, that the jury's award was excessive, and that it cannot be vicariously liable because Meyer's conduct was outside the course and scope of his employment. We review questions of law de novo. *See Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995).

## A. Supervisor's Liability for Wrongful Termination

■ ¶ 8 Under the Arizona Employment Protection Act, A.R.S. § 23–1501(3)(c)(Supp.2006) (AEPA), an employee may bring a claim for wrongful termination if the employer terminated the employment relationship in violation of public policy. The term "employer" is not defined in the statute. Meyer argues that he was not Higgins's employer, so he is not personally liable for wrongful termination.[2]

¶ 9 Our wrongful termination caselaw does not discuss a supervisor's personal liability. *See Cronin v. Sheldon*, 195 Ariz. 531, 534, ¶ 9, 991 P.2d 231, 234 (1999); *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). Cases addressing intentional interference with contract claims have held that when an individual supervisor/defendant was acting within the scope of authority as a management representative, he or she was, in effect, the employer, and could not interfere with his or her own contract. *See Barrow v. Ariz. Bd. of Regents*, 158 Ariz. 71, 78, 761 P.2d 145, 152 (App.1988); *Lindsey v. Dempsey*, 153 Ariz. 230, 233, 735 P.2d 840, 843 (App.1987). Higgins did not make a claim for intentional interference with contract. Contrary to Meyer's assertion, these cases do not hold that an employee cannot bring a wrongful termination claim against the individual supervisor who wrongfully terminated her.

¶ 10 Meyer relies on cases denying wrongful termination claims when plaintiffs were found to be independent contractors. *See*

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 321–22, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (holding that employees, not independent contractors, qualify for pension benefits); *Shah v. Deaconess Hosp.*, 355 F.3d 496, 499 (6th Cir.2004). Meyer argues that these cases imply that a wrongful termination claim cannot be brought against a supervisor/employee. We do not find these cases analogous.

¶ 11 Meyer also cites federal cases that have interpreted other definitions of "employer" and that preclude federal claims against individual supervisors. *See Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 584 (9th Cir.1993); *Ransom v. Ariz. Bd. of Regents*, 983 F.Supp. 895, 904 (D.Ariz.1997). The Arizona Civil Rights Act (ACRA) defines employer as a person who has fifteen or more employees *and any agent of that person.* A.R.S. § 41–1461(4)(a) (2004). The Ninth Circuit addressed a similar definition in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 (1988), and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 to 634 (1988). *See Miller*, 991 F.2d at 587. In *Miller*, the plaintiff argued that her supervisors were individually liable for sex and age discrimination. *Id.* at 584. The supervisors/defendants argued that they were not personally liable and only the corporate employer could be found liable under Title VII and the ADEA. *Id.* at 587.

¶ 12 The definition of employer in Title VII and ADEA includes any agent of the employer. 42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b). In *Miller*, the Ninth Circuit Court of Appeals noted that other jurisdictions have "reasoned that supervisory personnel and other agents of the employer are themselves employers for purposes of liability." 991 F.2d at 587 (citations omitted). However, the court held that it was bound by the decision in *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir.1982), which held that individual defendants cannot be liable for damages under Title VII. *Id.* Citing *Padway*, the court reasoned that because Congress limited lia-

---

**2.** The trial court denied Meyer's motion for partial summary judgment on this issue. The court distinguished the cases from other states, concluding that the wrongful termination claims

against the supervisors in those cases were precluded by the statutes applicable in other jurisdictions.

bility for small businesses under Title VII and ADEA, "it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.* The court found that the language in ADEA was consistent with Title VII and, therefore, refused to extend liability to individual supervisors under ADEA. *Id.* at 587–88; *see also Ransom,* 983 F.Supp. at 904 (applying the rationale of *Miller* to preclude individual liability under ACRA). This case, however, does not involve ACRA. Moreover, AEPA does not contain limiting provisions similar to those in ACRA, ADEA or Title VII which are intended to protect small businesses. We also distinguish *Miller* and *Ransom* on that basis.

■ ¶ 13 The jury found that Meyer committed the acts constituting the wrongful termination. Thus, both Meyer and Assmann were liable for Meyer's acts in violation of AEPA. *See Logan v. Forever Living Prods. Int'l, Inc.,* 203 Ariz. 191, 52 P.3d 760 (2002) (action for wrongful termination under AEPA brought against corporation and its agents held viable where agents attempted to extort property from plaintiffs). Generally, any person is charged with responsibility for his own torts. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 46, at 324 (5th ed.1984). Corporate officers are liable to those harmed by such officers' tortious conduct on behalf of the company they ostensibly serve. *Albers v. Edelson Tech. Partners L.P.,* 201 Ariz. 47, 52, ¶ 19, 31 P.3d 821, 826 (App.2001). The public policy of this state as vindicated in *Wagenseller* supports a determination that Meyer could be held liable in a case where the company has invested its supervisor with day-to-day control over the company, including the right to fire, and the supervisor has in fact exercised such control to harm another. We affirm the judgment against Meyer for wrongful termination.

## B. Wrongful Termination Damages Instruction

■ ¶ 14 Assmann argues that the wrongful termination damages instruction was erroneous because there was no evidence that Higgins suffered any physical harm or emotional distress as a result of the wrongful termination. Higgins argues that the instruction was a correct statement of the law and that the jury properly considered her emotional and physical harm in determining the amount of damages.

■ ¶ 15 In reviewing jury instructions, we "determine whether the trial court gave the jury the proper rules of law to apply in arriving at its decision. Absent substantial doubt whether the jury was properly guided in its deliberations, we will not overturn a jury verdict because of jury instructions." *Crackel v. Allstate Ins. Co.,* 208 Ariz. 252, 270–71, ¶ 68, 92 P.3d 882, 900–01 (App.2004) (citations omitted). When the trial court instructs on a theory that is not supported by the facts in evidence, we must reverse because the trial court has invited speculation. *City of Phoenix v. Clauss,* 177 Ariz. 566, 569, 869 P.2d 1219, 1222 (App.1994).

¶ 16 The jury was instructed that Higgins had the burden of proving the following elements of damages: (1) lost earnings and benefits and any decrease in earning capacity; (2) harm to plaintiff's reputation; (3) lost insurance coverage for medical bills; (4) pain, discomfort, and/or anxiety already experienced and reasonably probable to be experienced in the future as a result of the unlawful termination; (5) reasonable medical expenses; (6) physical injury to plaintiff caused by the wrongful termination; (7) expenses of securing other employment. Assmann objected that there was no evidence that the termination caused Higgins to suffer physical pain or emotional distress. The trial court overruled this objection, noting the testimony of Higgins's expert psychologist.

■ ¶ 17 The jury instruction is a correct statement of the law. *See Thompson v. Better–Bilt Aluminum Prods. Co.,* 171 Ariz. 550, 554, 832 P.2d 203, 207 (1992) (holding that a wrongful termination plaintiff is entitled to all ordinary tort damages legally caused by the tort). An element of damage is legally caused by a tortious act if the tort is " 'a substantial factor in bringing about the harm' " and the damages are closely connected to the tortious conduct so that they were reasonably foreseeable. *Id.* at 554–55, 832 P.2d at 207–08 (quoting Restatement (Sec-

ond) of Torts § 431(a)(1979), and citing §§ 431(b) cmt. d and 433).

¶ 18 In this case, as Assmann points out, Higgins did not state that her physical injuries or emotional harm were caused by the firing alone. She was unable to separate the singular act of firing from the overall incident involving Meyer. The entire episode formed the basis for the wrongful termination claim, and, therefore, the manner in which Higgins was fired must be taken into consideration in determining her damages. The manner in which she was fired was a substantial factor in bringing about the physical and emotional harm she suffered, as the firing was an instrumentality of Meyer's assault on Higgins.

¶ 19 Assmann argues that Higgins must show that "the fact that she lost her job was a substantial cause of her physical and emotional injuries." However, the wrongful termination tort includes more than just the discharge or termination. It includes the circumstances that make the termination wrongful or tortious. In this case, those circumstances included the fact that Meyer fired Higgins while assaulting her and Assmann's conduct incidental to Meyer's termination of Higgins and sustaining her termination. Therefore, the jury could consider these acts in determining whether Higgins's physical and emotional injuries were caused by the wrongful termination and the jury instruction was proper as a matter of law. In addition, we note that Assmann never offered the court an instruction that excluded only damages for physical harm; its proposed instruction eliminated damages for physical and emotional harm. *See Bradshaw v. State Farm Mut. Auto Ins. Co.*, 157 Ariz. 411, 758 P.2d 1313 (App.1986)(party who did not provide the court with acceptable jury instruction waived error).

## C. The Award Was Not Excessive

¶ 20 Assmann argues that the amount of the wrongful termination verdict was a result of the jury's passion or prejudice.

Meyer argues that these damages were duplicative and not supported by the evidence.[3] "[A] damages award is within the jury's province and 'will not be disturbed on appeal except where the verdict is so exorbitant as to show passion, prejudice, mistake, or complete disregard of the evidence.'" *Larsen v. Decker*, 196 Ariz. 239, 245, ¶ 28, 995 P.2d 281, 287 (App.2000) (quoting *Valley Nat'l Bank v. Brown*, 110 Ariz. 260, 264, 517 P.2d 1256, 1260 (1974)).

¶ 21 Assmann points to the initially inconsistent verdict as evidence that the jury's award was the result of passion or prejudice. The jury returned a $400,000 verdict against Assmann for wrongful termination and a $300,000 verdict against Meyer for the same claim. The trial court, however, corrected this by holding Assmann and Meyer jointly and severally liable for a $300,000 wrongful termination judgment. Assmann argues that the trial court abused its discretion by amending the verdict and denying a new trial. Assmann provides no authority for this argument. The imposition of a joint and several judgment was appropriate under A.R.S. § 12–2506(D) (2003) (stating that one party is responsible for the fault of another if the other person was acting as an agent or servant of the party).

¶ 22 Assmann and Meyer contend that the amount was excessive in light of the fact that Higgins only established $14,000 in economic damages. This argument assumes that Higgins failed to establish that any emotional damages resulted from the wrongful termination. As stated above, we reject the position that Higgins's emotional and physical damages were only caused by the assault. *See supra* ¶¶ 18–19.

¶ 23 The jury had evidence that the wrongful termination caused Higgins to suffer from post-traumatic stress disorder, that she would have future emotional harm, and that she would need future therapy. The facts relating to the amount and timing of the therapy Higgins received were for the jury

**3.** Meyer's opening and reply briefs cite no authority in support of this argument. Accordingly, we do not address this unsupported assertion. *See* ARCAP 13(a)(6); *Swanson v. Image Bank,* *Inc.,* 202 Ariz. 226, 239, ¶ 49, 43 P.3d 174, 187 (App.2002); *aff'd in part, rev'd in part on other grounds,* 206 Ariz. 264, 77 P.3d 439 (2003).

to weigh. This matter was within the jury's province. We will not disturb the damages awarded when there is evidence in the record to support the award. *Larsen,* 196 Ariz. at 245, ¶ 28, 995 P.2d at 287. Furthermore, the amount awarded does not shock the conscience of this court. *See Sheppard v. Crow–Barker Paul No. 1 Ltd. P'ship,* 192 Ariz. 539, 549, 968 P.2d 612, 622 (App.1998) (holding that "reviewing court will not alter a jury's damage verdict unless it finds the amount so unreasonable that it 'shocks the conscience' of the court.").

¶ 24 Assmann also contends that Higgins's counsel's closing arguments inflamed the jury resulting in the allegedly excessive verdict. Assmann argues that Higgins's counsel made improper closing arguments when he stated that the jury should consider the manner in which Higgins was terminated in considering the wrongful termination claim. As discussed above, the wrongful termination claim was based on the entire act, not just the uttering of the phrase, "You're fired." Consideration of the manner in which Higgins was fired did not allow Higgins to assert an intentional infliction of emotional distress claim against Assmann indirectly. Assmann would have the jury consider only the fact that Meyer told Higgins she was fired and whether there was a legitimate reason for the termination. As discussed above, the manner in which Higgins was terminated was a proper consideration in a wrongful termination claim.

▮▮▮ ¶ 25 Assmann also claims that Higgins's counsel encouraged the jury to punish Assmann. Assmann asserts that this was improper argument because the punitive damages claim had been withdrawn. Higgins's counsel argued that Assmann was liable for validating Meyer's conduct. He asked the jury to hold Assmann accountable for that action. This does not constitute asking the jury to punish the employer.[4] Therefore, we find Higgins's counsel did not make improper closing arguments.

### D. Assmann's Liability for Higgins's Firing by Meyer

¶ 26 Assmann argues that Meyer's acts were outside the course and scope of his employment, and therefore, it cannot be vicariously liable for his acts. "In reviewing a jury verdict, we view the evidence in the light most favorable to sustaining the verdict, and if any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the verdict, we will affirm the judgment." *Gonzales v. City of Phoenix,* 203 Ariz. 152, 153, ¶ 2, 52 P.3d 184, 185 (2002). "Substantial evidence is any relevant evidence from which a reasonable mind might draw a conclusion." *Mealey v. Arndt,* 206 Ariz. 218, 221, ¶ 12, 76 P.3d 892, 895 (App.2003) (internal quotations and citations omitted).

▮▮▮ ¶ 27 Assmann notes that the trial court granted partial summary judgment in its favor on the endangerment, assault, emotional distress, and punitive damages claims. The trial court found that reasonable jurors could not conclude that Meyer's conduct alleged in these claims was within the course and scope of his employment. However, these claims do not involve the employment relationship between the defendants and Higgins. Higgins could have asserted these claims against Meyer even if he did not terminate Higgins's employment during the course of the assault. The wrongful termination claim implicates Assmann by virtue of the employment relationship. Therefore, the summary judgment on the endangerment, assault, emotional distress, and punitive damages claims does not require this court to vacate the judgment finding Assmann liable for wrongful termination.

¶ 28 In *State v. Schallock,* 189 Ariz. 250, 255–261, 941 P.2d 1275, 1280–86 (1997), our supreme court discussed the doctrine of an employer's vicarious liability arising from an employee's actions within the course and scope of employment. *Schallock* rejected the language in *Smith v. American Express Travel Related Services Co.,* 179 Ariz. 131, 136, 876 P.2d 1166, 1171 (App.1994), which

---

**4.** Additionally, Assmann never objected at trial to any comments made by Higgins's counsel during   argument.

held that an "employer was not vicariously liable for a supervisor's harassment and sexual assaults on an employee because the supervisor's acts were not expressly or impliedly authorized by the employer or in furtherance of its business." 189 Ariz. at 256, 941 P.2d at 1281. The court held that this language implied that "an employer is never vicariously liable for an intentional tort," which was too broad a holding. *Id.*

¶ 29 Citing the Restatement (Second) of Agency § 229(1) (1957)[5] (hereinafter Restatement), the *Schallock* court recognized that "[c]onduct within the scope of employment may be either of the same nature as that authorized *or* incidental to that authorized." *Id.* at 257, 941 P.2d at 1282. Restatement § 229(2) sets forth factors to consider "[i]n determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment...." *See also Schallock*, 189 Ariz. at 257, 941 P.2d at 1282. Those factors are: (a) whether the act is one commonly done by such servants; (b) the time, place, and purpose of the act; (c) the previous relations between the master and servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant; (f) whether the master has reason to expect that such an act will be done; (g) the similarity in quality of the act done to the act authorized; (h) whether the instrumentality by which the harm is done has been furnished by the master to the servant; (i) the extent or departure from the normal method of accomplishing an authorized result; and (j) whether the act is seriously criminal. Restatement § 229(2).

¶ 30 Several of these factors weigh against finding the acts were within the course and scope of employment. The acts took place outside the office on a holiday weekend. *See* Restatement § 229(2)(b). Assmann also was unaware of the personal relationship between

Higgins and Meyer so it had no reason to expect Meyer to act in such a manner. *See id.* § 229(2)(f).

¶ 31 Firing Higgins appeared to further only Meyer's personal interests. *See* Restatement § 229(2)(b) & (f). However, like the supervisor in *Schallock* who sexually harassed his employees, Meyer was also "in complete charge of [the company's] day-to-day operation." 189 Ariz. at 259, 941 P.2d at 1284. Meyer was authorized to terminate employees and was the only one with such authority locally. *See* Restatement § 229(2)(a), (d) & (e). Meyer also had Higgins's company cell phone disconnected the next day. The jury, therefore, could conclude that Meyer's conduct was incidental to his authority as CEO of Assmann.

¶ 32 Although Meyer's act was criminal, *see* Restatement § 229(2)(j), *Schallock* held that "acts may be found in the scope even if forbidden or done in a forbidden manner, and even if consciously criminal or tortious." 189 Ariz. at 259, 941 P.2d at 1284 (citation omitted). "The question is whether at the time the injury occurred the employee was performing a service in furtherance of his employer's business, not whether it was done in a manner exactly as the employer prescribed." *Ortiz v. Clinton*, 187 Ariz. 294, 299, 928 P.2d 718, 723 (App.1996). There was evidence that Meyer had authority to fire employees, fired Higgins, and acted in accordance with that conduct the next day by disconnecting her company cell phone. The jury could have found that he was exercising this authority on behalf of Assmann, albeit in an improper manner.

¶ 33 The fact that no one at Assmann later acted to counter Meyer's acts further suggests that Assmann considered Meyer's termination of Higgins valid and within the scope of his employment. Assmann did not repudiate or rescind or attempt to ameliorate any of the actions taken by Meyer in its communications with her regarding these events. Reasonable jurors could consider this evidence that Assmann

---

**5.** This provision has been reformulated as Restatement (Third) of Agency § 7.07 (2006). Because in *Schallock* our supreme court applied the

provisions cited in the text herein, we do so as well.

accepted that the termination was in furtherance of its business and within Meyer's authority. *See Wagner v. City of Globe,* 150 Ariz. 82, 87, 722 P.2d 250, 255 (1986) (holding that it is a jury question whether one can infer that a principal affirms an unauthorized act by failing "to repudiate it, especially where one would naturally be expected to speak if he did not consent. Restatement (Second) of Agency § 94."). If the jury so found, then Assmann could be vicariously liable for Meyer's acts. *See Smith,* 179 Ariz. at 137, 876 P.2d at 1172 (holding that an employer may be liable for acts of its employee if the employee acted under the authority of employer and clear evidence exists that employer approved wrongful conduct).[6]

¶ 34 Assmann asks this court to reverse the jury's verdict as unsupported by the evidence. Viewing the evidence in a light most favorable to upholding the jury verdict, as stated above, there is evidence to support the verdict. *See McFarlin v. Hall,* 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980). We will not "reweigh the facts or comb through the record for evidence supporting a conclusion or inference different from that reached by the jury." *Flanders v. Maricopa County,* 203 Ariz. 368, 376, ¶ 49, 54 P.3d 837, 845 (App. 2002). The verdict against Assmann for wrongful termination is affirmed.

## E. Admission of Prior Altercation

¶ 35 Meyer filed a motion in limine to exclude any evidence of a prior altercation he was involved in with co-workers at a Z–Tejas restaurant. The trial court denied the motion. Meyer reurged his objection prior to the testimony regarding this incident. Meyer argues that the trial court committed reversible error in allowing Higgins to present evidence of this prior altercation. Assmann relies on Higgins's counsel's reference to this evidence in arguing that the jury verdict was the result of passion or prejudice. "We review the trial court's evidentiary rulings for a clear abuse of discretion; we will not reverse unless unfair prejudice resulted . . . or the court incorrectly applied the law." *Larsen,* 196 Ariz. at 241, ¶ 6, 995 P.2d at 283 (citations omitted).

¶ 36 Meyer argues that the evidence was irrelevant, that it was prejudicial, and that the trial court failed to conduct a balancing under Rule 403, Arizona Rules of Evidence. Higgins argues that this evidence was relevant to show that Assmann generally accepted Meyer's actions and did not regulate his conduct. There was evidence that Assmann was aware of this incident before Meyer fired Higgins and took no action. Higgins also argues that this prior incident demonstrated the corporate relationship between Meyer and Assmann which supported her claim that complaining about Meyer to Assmann would have been futile and that she acted reasonably in not responding to Assmann's letters.

¶ 37 The trial court did not state on the record its reasoning for denying Meyer's motion in limine. Meyer did not object to this. In claiming that the court's failure to conduct a Rule 403 balancing on the record requires reversal, Meyer cites *Shotwell v. Donahoe,* 207 Ariz. 287, 295–96, ¶ 33, 85 P.3d 1045, 1053–54 (2004). However, *Shotwell* held that the trial court abused its discretion by excluding a document solely because it contained a conclusory statement. *Id.* at 295, ¶ 32, 85 P.3d at 1053. The court did not hold that the court abused its discretion by failing to set forth its Rule 403 analysis. *Shotwell*

6. In this case the trial court took the issue of vicarious liability, based on course and scope of employment, from the jury as to the assault, endangerment, emotional distress and punitive damages claims, but did not take the issue from the jury as to wrongful termination. This arguably sets up two different standards for course and scope of liability, depending not on the conduct but on the tort alleged. We disagree with this approach. Conduct is not within the course and scope of employment depending upon the tort asserted, but depending upon whether it complies with factors required by law. Assmann's argument is that because the assault was determined as a matter of law to be outside the course and scope of employment, it could not be within the course and scope of employment when considering the wrongful termination claim. We have noted that the wrongful termination claim, unlike the assault, clearly implicates Assmann in its employment of both Meyer and Higgins. But even if the trial court is viewed as having made inconsistent rulings with regard to course and scope, Assmann is not entitled to relief. When faced with rulings from the trial court that conflict, we are not obligated to follow an erroneous ruling to the detriment of upholding a correct one.

advised that the trial court would have to conduct a Rule 403 balancing on remand because it had improperly excluded the evidence as conclusory. *Id.* at 296, ¶ 36, 85 P.3d at 1054. Therefore, we need not reverse the judgment because the trial court failed to explain the reasons for denying Meyer's motion in limine, although such an explanation would have aided appellate review. *See id.* at 295–96, ¶ 33, 85 P.3d at 1053–54.

¶ 38 Higgins claimed that Assmann's response to her termination showed that Meyer was acting within the course and scope of his employment. Assmann was aware of the prior incident involving Meyer and did nothing. No one at the company discussed the prior incident after it occurred, just as no one discussed the Higgins incident after it occurred. Thus, the evidence had some probative value to Higgins's position that Meyer was fully in charge in Arizona and the company did not challenge his conduct or decisions. This evidence did not, as Meyer contends, pertain only to undisputed issues.

¶ 39 To establish that the evidence was unfairly prejudicial, Meyer had to show that it suggested " 'a decision on an improper basis, such as emotion, sympathy, or horror.' " *Shotwell,* 207 Ariz. at 296, ¶ 34, 85 P.3d at 1054 (citation omitted). Although the evidence did not portray Meyer in a favorable light, we do not find that this evidence was so prejudicial that it would improperly prejudice the jury. Additionally, Meyer could have sought to reduce the prejudicial effect of this evidence by requesting a limiting instruction, but failed to do so. We find no abuse of discretion.

## CONCLUSION

¶ 40 We affirm the judgment below and award Higgins her costs on appeal.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and DANIEL A. BARKER, Judge.

