NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ROBERT J. BARON, *Plaintiff/Appellant,*

*v.*

HONORHEALTH, et al., *Defendants/Appellees.*

No. 1 CA-CV 19-0391
FILED 9-22-2020

Appeal from the Superior Court in Maricopa County
No.  CV2016-010115
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Robert J. Baron, Phoenix
*Plaintiff/Appellant*

Gabriel & Ashworth PLLC, Scottsdale
By Andrew S. Ashworth
*Counsel for Defendant/Appellee HonorHealth*

Gabriel & Ashworth PLLC, Scottsdale
By Stacy M. Gabriel
*Counsel for Defendant/Appellee Scottsdale Healthcare Hospitals*

-----

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

-----

**B A I L E Y**, Judge:

**¶1**　　　　Robert Baron appeals the trial court's grant of summary judgment in favor of HonorHealth and denial of his motion for a new trial. Because Baron has shown no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**　　　　Baron was hired by HonorHealth in July 2015 as an Electronic Medical Records ("EMR") trainer.  After working for HonorHealth for less than one month, Baron emailed his supervisor complaining that another trainer was not accurately grading the physician and medical assistant training assessments.  Approximately one week after Baron reported the other trainer to management, two students, who attended one of Baron's trainings, separately complained that Baron "was dictatorial, imposed strict rules on the group and did not teach in a way that was inspiring—it was very much an atmosphere of fear, which was almost palpable."

**¶3**　　　　Following the students' complaints, HonorHealth placed Baron on an investigatory suspension.  On September 8, 2015, HonorHealth gave Baron a "final warning" indicating that if he failed to improve his teaching performance, he would be terminated.  Baron appealed the final warning.  HonorHealth employee Chuck Scully evaluated Baron's appeal and recommended Baron be fired.  Despite this recommendation, HonorHealth did not fire Baron.

**¶4**　　　　In late September, Baron asked to speak with an Equal Employment Opportunity Commission ("EEOC") official at HonorHealth. During this time, Baron applied to transfer to several other open positions within HonorHealth but was unsuccessful each time.  Baron contested the denial of his transfer applications, continued to appeal the issuance of the final warning, and on November 9, 2015, he asserted that he had filed a federal EEOC complaint regarding these issues.

**¶5**　　　　One month after disclosing the EEOC complaint filing, Baron reported that he witnessed HonorHealth Help Desk employees asking

physicians and medical students for their personal EMR passwords to help resolve the employees' computer-related issues. Baron was unable to say whether any employee improperly accessed patient health information, and in fact, was not reporting that any patient information was accessed, only the sharing of passwords. At the same time Baron reported the password sharing, HonorHealth learned that Baron never filed a complaint with the EEOC. As a result, Baron was terminated from HonorHealth for having "fabricated or knowingly distorted, exaggerated or minimized a report of wrongdoing or a violation of the Compliance Program, Compliance Standards or laws and regulations."

¶6            Baron sued HonorHealth and thirteen HonorHealth supervisors and directors. Baron brought claims under the Arizona Employment Protection Act ("AEPA"), *see* A.R.S. §§ 23-1501 to -1502, and A.R.S. § 36-450.02. Baron filed a First Amended Complaint ("FAC") that included claims for fraud, negligence and the negligent infliction of emotion distress ("NIED"). The trial court partially dismissed Baron's FAC, including all claims against individual HonorHealth employees. Baron's allegations against HonorHealth under the AEPA was the only surviving claim. Baron filed a Second Amended Complaint ("SAC"), again asserting the same claims as those previously dismissed in the FAC. The trial court again dismissed the additional claims, leaving only the allegations under the AEPA.

¶7            Over two years after litigation commenced, the trial court granted HonorHealth's motion for summary judgment on the AEPA claim. The court found Baron had not shown reasonable evidence of the required elements of an AEPA claim because he could not establish that he either disclosed a reasonable belief that a violation of Arizona law had occurred or that he was terminated as a result of that disclosure. The court concluded that no reasonable juror could find that Baron's employment was terminated in retaliation for his complaints or that retaliation was a substantial factor in Baron's termination.

¶8            Following the entry of summary judgment, Baron filed a motion for a new trial pursuant to Arizona Rule of Civil Procedure ("Rule") 59(a). In the motion, Baron challenged many individual rulings, including the partial dismissals of his complaints, discovery rulings, rulings on various motions for sanctions, and the grant of summary judgment. The court denied Baron's motion.

**¶9**        We have jurisdiction over Baron's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -2101(A)(1), and -2101(A)(5)(a).

## DISCUSSION

**¶10**        Baron challenges the grant of summary judgment and denial of his motion for a new trial. We address each of Baron's arguments in turn.

I. Grant of HonorHealth's Motion for Summary Judgment.

**¶11**        We review the court's grant of summary judgment de novo. *Jackson v. Eagle KMC L.L.C.*, 245 Ariz. 544, 545, ¶ 7 (2019). "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(a). In opposing a motion for summary judgment, the non-moving party must "set forth specific facts showing a genuine issue for trial." *Id.* at (e). An "opposing party may not rely merely on allegations or denials of its own pleading." *Id.*

**¶12**        To prove a claim under § 23-1501(A)(3)(c)(ii), Baron must demonstrate HonorHealth terminated his employment in retaliation for "[t]he disclosure by [Baron] in a reasonable manner that [Baron had] information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate . . . the statutes of this state." This requires proof of three elements: (1) Baron had information or a reasonable belief that HonorHealth was violating Arizona law; (2) Baron disclosed the alleged violations to HonorHealth or one of its employees who were in a position to investigate and/or stop the violations, or Baron disclosed the information to an agency with the authority to investigate; and (3) Baron was terminated due to the first and second elements. Rev. Ariz. Jury Instr. ("RAJI") (Civil) Employment Law 7 (5th ed. 2017).

**¶13**        Once Baron established his prima facie case, the burden shifted to HonorHealth to demonstrate a legitimate reason for his termination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Czarny v. Hyatt Residential Mktg. Corp.*, 1 CA-CV 16-0577, 2018 WL 1190051, at *2, ¶¶ 12–13 (Ariz. App. Mar. 8, 2018) (mem. decision) (extending *McDonnell Douglas* burden-shifting framework to claims under § 23-1501). After HonorHealth provided a legitimate reason for the termination, the burden shifted back to Baron to establish the reason HonorHealth provided was pretextual. *Czarny*, 1 CA-CV 16-0577, at *2, ¶ 12. We first examine whether Baron established a prima facie case that he was terminated for reporting a violation of Arizona law.

¶14            First, Baron must demonstrate he had information or a reasonable belief that HonorHealth was violating *Arizona* law. *See* § 23-1501(A)(3)(c)(ii). Baron reported two types of conduct which he considered to be violations of a law. First was his allegation that HonorHealth failed to properly grade EMR training assessments administered to physicians and medical assistants. Second was his assertion that HonorHealth physicians shared their personal passwords with Help Desk employees. When Baron reported his observations that another trainer was failing to grade the EMR assessments and providing the correct answers to the test takers, he alleged this conduct was "fraudulent." Yet, Baron conceded in his deposition that he was unaware of any violations of Arizona law that occurred when HonorHealth failed to properly grade the assessments. In fact, no Arizona statute requires EMR training or testing for health care employees. Thus, Baron could not show that HonorHealth or its employees engaged in a fraudulent scheme or artifice pursuant to A.R.S. § 13-2310, as he alleged.

¶15            With respect to Baron's allegation that physicians shared their personal passwords with HonorHealth Help Desk employees, at the time of reporting, Baron could not say that any patient health information was accessed but alleged the conduct violated the Health Insurance Portability and Accountability Act, a federal law that prohibits disclosure of certain healthcare information. Baron conceded at his deposition that at the time he reported the password sharing, "[he] was not reporting patient data access." And he failed to establish that the alleged conduct otherwise violated Arizona law. *See Galati v. Am. W. Airlines, Inc.*, 205 Ariz. 290, 293, ¶ 9 (App. 2003) (noting that § 23-1501(A)(3)(c)(ii) "contemplate[s] only transgressions of Arizona law as violative of Arizona public policy"). Accordingly, Baron's claim under the AEPA fails.

¶16            Baron not only failed to establish a prima facie case for retaliatory termination, HonorHealth provided a legitimate basis for his termination. In December 2015, Baron was terminated for having "fabricated or knowingly distorted, exaggerated, or minimized a report of wrongdoing or a violation of the Compliance Program, Compliance Standards or laws and regulations" by lying about filing a complaint with the EEOC. Baron was fired only after HonorHealth confirmed with the EEOC that no charge had been filed. Baron cannot overcome HonorHealth's basis for his dismissal because a request made under the Freedom of Information Act never produced a copy of the alleged EEOC complaint and Baron never provided one.

¶17        The record demonstrates Baron had neither information nor a reasonable belief that HonorHealth or one of its employees violated any Arizona law. *See* § 23-1501(A)(3)(c)(ii); RAJI (Civil) Employment Law 7. The trial court correctly found that Baron provided no evidence establishing a genuine issue of material fact on the first element of § 23-1501. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990). Furthermore, Baron did not provide *any* evidence to refute HonorHealth's legitimate basis for termination. To defeat summary judgment, Baron had to oppose HonorHealth's motion with affidavits "or other materials that would be admissible in evidence" but failed to do so here. Ariz. R. Civ. P. 56(c)(5)–(6). Baron's self-serving claims were insufficient to create a genuine issue of material fact or oppose HonorHealth's motion. Because no genuine issue of material fact exists, the court properly granted summary judgment in favor of HonorHealth. *See Orme Sch.*, 166 Ariz. at 305; Ariz. R. Civ. P. 56(e).

II. Denial of Baron's Motion for New Trial Pursuant to Rule 59.

¶18        Baron also appeals the denial of his motion for a new trial that challenged the verdict under Rule 59(a)(1)(A), (B), (F), (G), and (H). "The grant or denial of a motion for new trial is within the sound discretion of a trial court, and we will not upset its ruling absent a clear showing of an abuse of discretion." *Matos v. City of Phoenix*, 176 Ariz. 125, 130 (App. 1993). "An 'abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Quigley v. City Court of City of Tucson*, 132 Ariz. 35, 37 (App. 1982).

A. Baron has not shown a clear abuse of discretion in denying his motion under Rule 59(a)(1)(A).

¶19        Baron's motion for new trial challenged a number of the trial court's rulings. First, Baron challenged the court's findings that the FAC and SAC did not satisfy the *Higgins* test and that Baron is not a health professional as defined by § 36-450.02. *See Higgins v. Assmann Elecs. Inc.*, 217 Ariz. 289, 294, ¶ 13 (App. 2007) (setting forth the test for determining a supervisor's individual tort liability). He does not challenge the dismissal of his NIED, negligence or fraud claims. We review the dismissal of a complaint under Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). In considering whether a complaint states a claim upon which relief may be granted, we "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Id.* at 356, ¶ 9.

¶20            In both his FAC and SAC, Baron named numerous HonorHealth supervisors and directors as defendants.  Under *Higgins*, a supervisor may be individually liable only "where the company has invested its supervisor with day-to-day control over the company, including the right to fire, and the supervisor has in fact exercised such control to harm another." *Higgins*, 217 Ariz. at 294, ¶ 13.  Neither of Baron's complaints set forth facts to establish that HonorHealth gave the named supervisors and directors "day-to-day control over the company" or that the named defendants in fact exercised such control to harm Baron.  *See id.* Although each complaint detailed some of the supervisors' actions as related to Baron's termination from HonorHealth, the facts pled do not meet *Higgins*'s requirements.  For example, in his SAC Baron named Rhonda Forsyth, the current President of HonorHealth, as a defendant.  His only allegations against Forsyth were that Baron attempted to contact her and those attempts went unanswered.  Yet, his complaint does not show what control Forsyth exercised or what harm, if any, she caused to Baron. Baron's complaints both fail to demonstrate that the supervisors involved in his termination actually exercised their control to cause harm to him.  *See id.*  Thus, the court did not err in dismissing Baron's claims against the individual HonorHealth supervisors and directors.

¶21            Baron also argues his claims under § 36-450.02 were improperly dismissed as he is a "health professional" under the statute. Section 36-450.02 protects health professionals who report specific acts in good faith pursuant to A.R.S. § 36-450.01.  Article 11, in which §§ 36-450.01 and -450.02 are found, provides that the definition of "health professional" is the same as the one found in A.R.S. § 32-3201.  *See* A.R.S. § 36-450(1). "'Health professional' means a person who is certified or licensed pursuant to chapter 7, 8, 11, 13, 14, 15, 15.1, 16, 17, 18, 19, 19.1, 21, 25, 28, 29, 33, 34, 35, 39, 41 or 42 of this title [32], title 36, chapter 4, article 6, title 36, chapter 6, article 7 or title 36, chapter 17."  § 32-3201(2).  Despite Baron's complaints alleging his experience and education in the health care industry, his lack of certification or licensure in any listed field precludes his designation as a "health professional."   Moreover, he provides no basis from which to conclude that a "health professional" cannot be fired for fabricating or knowingly distorting health care violations.  Accordingly, the court did not err in dismissing Baron's claim under § 36-450.02.

¶22            Baron also challenges the court's ruling limiting him to only three nonparty depositions, for two hours each.  Baron argues the court abused its discretion as he was entitled to conduct each deposition for four hours.  Not so.  As relevant here, Rule 30 provides that a party may only take the depositions of an expert witness, or a document custodian.

Without court approval, "a party *may not depose any other person*." Ariz. R. Civ. P. 30(a)(1) (emphasis added). Thus, the court was permitted to limit Baron to only three nonparty depositions and did not abuse its discretion in doing so. As to the duration of the deposition, Baron's argument on appeal ignores the language of the Rule: "[u]nless the parties agree *or the court orders otherwise*, a deposition is limited to 4 hours." *Id.* at (d)(1) (emphasis added). Because the court set a different time limit for the nonparty depositions in this case, Baron was not entitled to the four-hour duration set by the Rule.

**¶23** As to the numerous other rulings Baron challenged in his motion for new trial and here on appeal, he has failed to meet his burden. Baron does not demonstrate that the court clearly abused its discretion by denying his motion for a new trial. *See Matos*, 176 Ariz. at 130 ("[W]e will not upset [the trial court's] ruling absent a clear showing of an abuse of discretion."). As no showing has been made here, we cannot and will not find the court abused its discretion in denying Baron's motion for new trial.

B. Baron has abandoned and waived any arguments that the motion for new trial should have been granted pursuant to Rule 59(a)(1)(B) or (G).

**¶24** A new trial based on attorney misconduct should only be granted in the most serious of cases to prevent a miscarriage of justice. *Ritchie v. Krasner*, 221 Ariz. 288, 303, ¶ 52 (App. 2009). "The trial judge is in the best position to 'decide whether the misconduct materially affected the rights of the aggrieved party.'" *Id.* (quoting *Leavy v. Parsell*, 188 Ariz. 69, 72 (1997)). However, Baron has failed to set forth any facts establishing that the judgment resulted from the misconduct of the prevailing party. Neither his motion for new trial nor his appellate briefs demonstrate what misconduct, if any, occurred in this case. "Merely mentioning an argument in an appellate opening brief is insufficient." *MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011). Baron's failure to meaningfully argue this point abandons and waives it. *Id.*; *see also Ace Auto. Prods., Inc. v. Van Duyne*, 156 Ariz. 140, 143 (App. 1987) ("It is not incumbent upon the court to develop an argument for a party.").[1]

---

[1] "We hold unrepresented litigants in Arizona to the same standards as attorneys. Therefore, . . . courts may not afford special leniency to pro se litigants." *Flynn v. Campbell*, 243 Ariz. 76, 83–84, ¶ 24 (2017).

C. Because the court properly granted summary judgment in favor of HonorHealth, the court did not abuse its discretion in denying Baron's motion for a new trial under Rule 59(a)(1)(F) or (H).

**¶25**       Baron argues the trial court improperly denied his motion for new trial because the court improperly granted summary judgment in HonorHealth's favor.   Baron alleges that "several, material factual disputes" existed and that HonorHealth's motion was "baseless and frivolous."   However, as discussed in Section I of this decision, there are no genuine issues of material fact that Baron had information or a reasonable belief that HonorHealth or one of its employees violated Arizona law. Because Baron never provided any admissible evidence to create a genuine issue of material fact, the court did not improperly disregard Baron's evidence or enter a judgment unsupported by evidence. *See Orme Sch.*, 166 Ariz. at 305; Ariz. R. Civ. P. 56(e).   The court, therefore, did not abuse its discretion in denying Baron's motion on these grounds. *See* Ariz. R. Civ. P. 59(a)(1)(F), (H).

## CONCLUSION

**¶26**       We affirm the judgment and denial of a motion for a new trial.



AMY M. WOOD • Clerk of the Court
FILED:    AA