**Kamensky v. Roemer Industries Inc.**

*Peter C. Acker,* for plaintiff.
*Robert H. Isbell,* for defendants.

FORNELLI, *J.,* May 12, 1988 — This case comes before us on preliminary objections in the form of a demurrer to plaintiff's wrongful discharge complaint. Defendants demur as to: (1) the inclusion of Joseph O'Toole as an individual defendant; (2) the entire wrongful discharge cause of action as not violating a recognized public policy; and (3) the request for attorney's fees. Plaintiff has conceded number 3 by withdrawing his claim for attorney's fees. It is, therefore, moot.

It is well-established that a demurrer admits all relevant facts sufficiently pled in the complaint and all inferences fairly deducible therefrom.[1] See *Engel v. Friend's Hospital,* 439 Pa. 559, 266 A.2d 685 (1971); *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether or not a demurrer should be granted, it should be resolved in favor of denying the demurrer. See *Todd v. Skelly,* 384 Pa. 423, 120 A.2d 906 (1956); *Sun Ray Drug Co. v. Lawler,* 366 Pa. 571, 79 A.2d 262 (1951).

---

1. Defendant's preliminary objections were properly endorsed with a notice to plead and all factual matters there pled are also deemed admitted. See Pa.R.C.P. 1029(a).

In his complaint, plaintiff alleges that he was employed by defendant Roemer Industries Inc. as a computer graphics operator for about seven months commencing in October 1986; that on March 22, 1987 he was discharged by defendant O'Toole, president of Roemer Industries; that plaintiff then filed a claim for unemployment compensation with the Pennsylvania Office of Employment Security. The claim was disapproved and plaintiff filed an appeal from this determination for a hearing before a workers' compensation referee.

While the appeal was pending, on April 28, 1987, plaintiff was reinstated as an employee of Roemer Industries subject to his compliance with a written agreement signed by both plaintiff and O'Toole as president of defendant company. After signing the agreement, plaintiff was advised by O'Toole that he must also withdraw his pending unemployment compensation claim and that if he failed to do it he would be discharged. On May 12, 1987, while the appeal was still pending, plaintiff was discharged for failure to withdraw the appeal.

It is undisputed that defendant O'Toole was acting in his capacity as president of Roemer Industries when he discharged plaintiff and also when he informed him of the condition precipitating his discharge. Defendants' demurrer is based on the assumption that the inclusion of O'Toole as an individual defendant is an attempt to pierce the corporate veil. This assumption is incorrect. O'Toole's actions as alleged are not nonfeasance, but are malfeasance for which he may be held individually liable. It is "[t]he general, if not universal rule, that an officer of the corporation who takes part in the commission of the tort by the corporation is personally liable therefore." *Wicks v. Milzoco Builders Inc.,* 503 Pa. 614, 470 A.2d 86 (1983).

Defendants acknowledge in their brief that since it is alleged that O'Toole was the officer who personally terminated plaintiff's employment on both occasions "[i]t would appear that as such, Mr. O'Toole personally participated in and directed the activity that plaintiff is claiming to be the tort of wrongful discharge and, therefore, could be held individually liable along with the corporate entity, Roemer Industries Inc." We find this acknowledgment to be an accurate statement of the applicable law and accordingly hold plaintiff has alleged a basis upon which O'Toole may be held personally liable for any damages flowing from his allegedly advising plaintiff to drop his unemployment claim or suffer discharge, and his subsequent discharge of plaintiff.

It is well-settled that Pennsylvania law will recognize a cause of action for wrongful discharge when the discharge abridges significant and recognized public policy considerations. See *Staats v. Ohio National Life Insurance Co.*, 620 F.Supp. 118 (W.D. Pa. 1985); *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894 (3d Cir. 1983); *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Defendants, however base their demurrer on the contention that termination for refusing to withdraw an unemployment compensation claim does not violate a recognized public policy.[2] We disagree.

---

2. Defendants argue that plaintiff's compensation claim is without merit and therefore, he was requested to give up a claim to which he had no right in any event. While it is true that plaintiff's appeal was subsequently denied by the unemployment compensation referee on June 4, 1987, over three weeks after his discharge, the issue is whether he may be forced to give up his right to pursue an unresolved unemployment compensation claim as a condition of continued employ-

The Unemployment Compensation Act at 43 P.S. §752 contains a legislative declaration of public policy which provides the basis for interpretation of the individual sections of the act. *Department of Labor and Industry, Bureau of Employment Security v. Unemployment Compensation Board of Review,* 418 Pa. 471, 211 A.2d 463 (1965).

"The preliminary provisions of the Unemployment Compensation Law constitute a declaration of public policy with respect to purposes of the legislature in establishing a system of unemployment compensation and are to be considered in construing the law." *Fazio v. Unemployment Compensation Board of Review,* 164 Pa. Super. 9, 63 A.2d 489 (1949).

In addition to this declaration, criminal sanctions are provided for in 43 P.S. §861 which also renders invalid any agreement by an employee to waive or release any rights to compensation under the act. Also, 43 P.S. §873 contains a catch-all penalty provision for violations under any provision of the act for which a penalty is not otherwise prescribed. Thus, the public policy is expressly declared; it is supported by criminal penalties; and any agreement diminishing the rights given is invalidated.

"[W]here a statute of the commonwealth expresses a public policy designed to alleviate a condition of possible distress among the public or a segment thereof and explicitly proscribes waiver of the benefits of the act, no private agreement, however valid between the parties, can operate as a waiver." *Williams v. Unemployment Compensation Board of Review,* 193 Pa. Super. 320, 164 A.2d 42 (1960) quoting *Gianfelice Unemployment Compen-*

ment. This issue cannot turn upon who ultimately prevails on the unemployment compensation claim.

*sation Case,* 396 Pa. 545, 153 A.2d 906 (1959); *Smith v. Unemployment Compensation Board of Review,* 396 Pa. 557, 154 A.2d 492 (1959).[3]

In their brief, defendants assert that plaintiff's unemployment claim had already been denied at the initial level when plaintiff was fired the second time; and that defendant believed him to be disloyal and untrustworthy since he had refused to acknowledge that he had done something wrong which resulted in and justified his initial firing. By alleging the latter facts not found in the complaint or the admitted facts in the preliminary objections endorsed with a notice to plead, defendants have created a speaking demurrer which is impermissible under Pennsylvania rules of pleading. See *Linda Coal & Supply Company v. Tasa Coal Company,* 416 Pa. 97, 204 A.2d 451 (1964); *Dorsey v. Kalathas,* 44 D.&C. 3d 272 (1986). Since this comes before us on a demurrer we are permitted to consider only the facts alleged in the complaint or not denied in preliminary objections endorsed with a notice to plead. See *International Union of Operating Engineers v. Linesville Construction Company,* 457 Pa. 220, 322 A.2d 353 (1974); *Muia v. Fazzini,* 416 Pa. 377, 205 A.2d 856 (1965).

Therefore, we are unable to consider the additional facts presented by defendants and cannot apply the balancing test introduced by the court in *Yaindi v. Ingersoll-Rand Company Standard Pump-*

3. This case is distinguishable from *Lefever v. Lancaster Leaf Tobacco Company of Pa.,* 71 Lancaster L. Rev. 24 (1987), which held that discharging an employee for filing a worker's compensation claim did not violate public policy because unlike the Workers' Compensation Act, the Unemployment Compensation Act does contain an explicit statement of public policy with criminal sanctions for violations of that public policy.

*Aldrich Division,* 281 Pa. Super. 560, 422 A.2d 611 (1981) and advocated by defendants. Were this before us on another motion such as a summary judgment motion which would permit us to consider additional, undisputed facts alleged by defendants and balance the interests of the employer and the employee as to the nature of employer's conduct; employer's motive; interests of employee with which employer's conduct interferes; interests sought to be advanced by the employer; social interest in protecting freedom of action of employer; and contactual interests of employee, *Id.,* then plaintiff might be precluded from recovering.[4]

However, on the present state of the record the plaintiff has alleged a violation of a recognized public policy and states a cause of action in wrongful discharge.

## ORDER

And now, May 12, 1988, defendant's demurrer as to the inclusion of Joseph O'Toole as an individual defendant and as to plaintiff's wrongful discharge claim are denied. The demurrer to plaintiff's claim for attorney's fees is moot due to plaintiff's withdrawal thereof.

---

4. Moreover, we note that the agreement for rehiring attached to the complaint as exhibit A sets forth as part of the consideration for rehiring "reinstatement without back pay." If it is established that included in the back pay given up by plaintiff is the abandonment of his questionable unemployment claim; and if it is viewed as a negotiated legitimate condition of employment governing an employee's right to employment status then such an agreement of rehiring may not violate public policy. See *Czarnecki v. Unemployment Compensation Board,* 185 Pa. Super. 46, 137 A.2d 844 (1958).