PHYSIO GP, INC., Physio, Ltd.,
Tanja Saadat, and Shawn
Saadat, Appellants

v.

Natalie NAIFEH, Appellee.

No. 14–08–00017–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 4, 2010.

Leslie WM Adams, Houston, for appellants.

Linda D. King, Houston, for appellee.

Panel consists of Justices YATES and
SULLIVAN and Senior Justice HUDSON
(dissenting).*

## MAJORITY OPINION

LESLIE B. YATES, Justice.

Appellants Tanja Saadat and Shawn
Saadat appeal[1] the trial court's judgment
holding them individually liable for firing
appellee Natalie Naifeh for the sole reason

---

* Senior Justice J. Harvey Hudson, sitting by
assignment.

1. Physio GP, Inc. and Physio, Ltd. filed a
notice of appeal but did not file briefs or

otherwise pursue their appeal. Therefore, we
dismiss their appeal for want of prosecution.
Tex.R.App P. 42.3(b).

that she refused to perform an illegal act. *See Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985). Because we hold that the *Sabine Pilot* doctrine should not be extended to impose liability on individual employees rather than the plaintiff's employer, we reverse and render.

## BACKGROUND

Physio GP, Inc. and Physio, Ltd. (collectively "Physio") operated an occupational and physical therapy clinic. The Saadats own Physio. Naifeh began working for Physio in 2003 as a therapist and was fired in 2005. The reason for her termination is the crux of this litigation. Naifeh claims that Tanja Saadat was consistently falsifying Naifeh's patient treatment documents to include additional services that were not performed and thereby obtain higher payments from insurers. Naifeh repeatedly refused to sign these altered treatment documents and was eventually fired. The Saadats assert they fired her for various performance infractions, including unauthorized treatment on a patient and misuse of company time. Naifeh claims these reasons were manufactured in an attempt to cover up terminating her for refusing to sign off on fraudulent paperwork, which she claims was unethical and illegal under 18 U.S.C. § 1035 (2006).[2]

Naifeh sued Physio and the Saadats alleging wrongful termination against all defendants and that the Saadats were the alter egos of Physio.[3] The trial court granted summary judgment to the Saadats as to alter ego.[4] When the case was called for trial, the defendants appeared and stated that they were not going to defend the case any further, based on lack of resources to pay their attorney. The case proceeded to a bench trial, and the trial court found that Naifeh was fired solely for refusing to perform an illegal act. The trial court assessed damages and attorney's fees against all defendants jointly and severally and exemplary damages separately against Physio, Ltd., Tanja Saadat, and Shawn Saadat. The Saadats now appeal.

## ANALYSIS

In their first issue, the Saadats argue that the trial court erred in holding them personally liable for the *Sabine Pilot* violation. Naifeh argues, and the trial court agreed, that in a corporate setting, individuals can be personally liable for their own torts, including wrongful discharge under *Sabine Pilot.* We review a trial court's legal conclusions de novo. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002).

■■■ Texas is an employment at will state, meaning that employment contracts can be terminated at will by either party unless they have bargained otherwise. *See Fed. Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993); *see also Armijo v. Mazda Int'l,* No. 14–03–00365–CV, 2004 WL 1175335, at *3 (Tex.App.-Houston [14th Dist.] May 27, 2004, pet. denied) (mem. op.) (holding that an employment at will agreement is an enforceable contract until terminated by either party). The one common-law exception to the employment at will doctrine is set forth in *Sabine Pilot:* an employer cannot

2. Section 1035 criminalizes behavior relating to, among other things, false statements regarding health care made in connection with the payment for health care benefits.

3. Naifeh also alleged that the Saadats tortiously interfered with her employment contract with Physio, but no issue regarding that claim has been brought in this appeal.

4. Naifeh has not challenged on appeal the trial court's summary judgment on her alter ego allegation.

fire an employee for the sole reason of refusing to perform an illegal act. 687 S.W.2d at 735. The Texas Supreme Court created this tort to promote the public policy of preventing an employee from being forced to choose between keeping his job and facing criminal liability. *See Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 724 (Tex.1990); *Sabine Pilot,* 687 S.W.2d at 735. The issue of whether an individual, as opposed to the employer, can be held personally liable for a *Sabine Pilot* violation appears to be an issue of first impression in Texas. Neither party identified any cases that are on point to this issue, either in the trial court or in this court.[5] However, several other states have addressed the issue of individual liability under their version of a tort of wrongful discharge in violation of public policy.

█  Some states allow individual liability, reasoning that individuals are liable for their own torts, even agents acting on behalf of their employers. *See, e.g., Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 775–76 (Iowa 2009); *Ballinger v. Del. River Port Auth.*, 172 N.J. 586, 800 A.2d 97, 110–11 (2002); *Harless v. First Nat'l Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692, 698–99 (1982). According to their logic, employees can therefore be liable for a *Sabine Pilot* violation the same as any other tort. *See, e.g., Jasper,* 764 N.W.2d at 775–76; *Ballinger,* 800 A.2d at 110–11; *Harless,* 289 S.E.2d at 698–700. They fur-

ther reason that individual liability promotes deterrence and better decision making because it allows the active wrongdoer to be held directly responsible. *See Borecki v. E. Int'l Mgmt. Corp.*, 694 F.Supp. 47, 59 (D.N.J.1988); *Jasper,* 764 N.W.2d at 776.

█  We disagree with this analysis and are persuaded by the courts holding that individual liability is inappropriate in such circumstances. The employment relationship is the source of the duty in wrongful discharge torts such as *Sabine Pilot. See Miklosy v. Regents of Univ. of Cal.*, 44 Cal.4th 876, 80 Cal.Rptr.3d 690, 188 P.3d 629, 644–45 (2008); *Schram v. Albertson's, Inc.*, 146 Or.App. 415, 934 P.2d 483, 490–91 (1997). The employment relationship exists only between the employer and employee, not between two employees, even when one of those employees is a supervisor or even the owner. *See Miklosy,* 80 Cal.Rptr.3d 690, 188 P.3d at 644–45; *Buckner v. Atl. Plant Maint., Inc.*, 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565, 569 (1998); *Schram,* 934 P.2d at 490–91. Only the employer has the power to hire and fire, and supervisors merely exercise that power on the employer's behalf. *See Miklosy,* 80 Cal.Rptr.3d 690, 188 P.3d at 644–45; *Smith v. Waukegan Park Dist.*, 231 Ill.2d 111, 324 Ill.Dec. 446, 896 N.E.2d 232, 235–36 (2008); *Schram,* 934 P.2d at 490. Corporate employees cannot, in their personal capacity, wrongfully discharge an

---

**5.** Naifeh argues that two cases from the First Court of Appeals "suggest that an individual can be liable for wrongful termination in violation of *Sabine Pilot* without the necessity of showing that the individual was the alter ego of the company," citing *University of Texas Medical Branch v. Hohman*, 6 S.W.3d 767 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.) and *Nguyen v. Technical & Scientific Application, Inc.*, 981 S.W.2d 900 (Tex. App.-Houston [1st Dist.] 1998, no pet.). In *Hohman,* the only mention of *Sabine Pilot* is

in the court's holding that government officials cannot be sued in their official capacity because of sovereign immunity. *See* 6 S.W.3d at 777. The only issue in *Nguyen* was whether an employee who was constructively discharged rather than fired could still bring a *Sabine Pilot* claim. *See* 981 S.W.2d at 900–01. The court does not discuss individual liability at all. We see nothing in either of these cases suggesting that individual liability would be appropriate in a *Sabine Pilot* case.

employee because they have no personal authority to fire an employee. *See Miklosy*, 80 Cal.Rptr.3d 690, 188 P.3d at 644; *Smith*, 324 Ill.Dec. 446, 896 N.E.2d at 235–36; *Schram*, 934 P.2d at 490–91. Furthermore, individual liability is not necessary to promote deterrence because liable employers will likely take their own measures to deter agents or employees from wrongfully exercising termination authority. *See Buckner*, 230 Ill.Dec. 596, 694 N.E.2d at 570. Fear of financial responsibility for a potential lawsuit could discourage supervisors from terminating employees in legitimate situations. *Cf. Reno v. Baird*, 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333, 1347 (1998) (analyzing supervisor liability under state discrimination statute). Moreover, it can be difficult to determine—or limit in scope—the individuals who might be held accountable for a decision to terminate. This is particularly true in a corporate environment involving group evaluation of employees and collective decisionmaking for terminations. *See id.* at 1346–47.

Naifeh argues, and the trial court found, that liability is appropriate because individuals are liable for their own torts in the corporate setting. *See Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex.App.-Dallas 2007, no pet.); *Ennis v. Loiseau*, 164 S.W.3d 698, 707 (Tex.App.-Austin 2005, no pet.). However, these cases involve torts such as fraud that can be committed by an individual.[6] *See Ennis*, 164 S.W.3d at 700–01. The purpose of individual liability in the corporate setting is to prevent an individual from using the corporate structure or agency law as a blanket to insulate himself from liability for his otherwise tortious conduct. *See Walker*, 232

S.W.3d at 919. But only an employer can wrongfully terminate the employment relationship, so the individual's conduct logically could not be otherwise tortious. *See Miklosy*, 80 Cal.Rptr.3d 690, 188 P.3d at 644–45; *Buckner*, 230 Ill.Dec. 596, 694 N.E.2d at 570; *Schram*, 934 P.2d at 490–91. Moreover, *Sabine Pilot* is an extremely specific and narrow exception to the employment at will doctrine, and both the Texas Supreme Court and this court have consistently rejected attempts to expand its scope. *See Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332–33 (Tex.2006); *Mayfield v. Lockheed Eng'g & Scis. Co.*, 970 S.W.2d 185, 187–88 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *see also Buckner*, 230 Ill.Dec. 596, 694 N.E.2d at 568. Naifeh has a remedy against Physio,[7] and expanding *Sabine Pilot* to impose individual liability against the Saadats is more appropriately the task of the Texas Supreme Court or the Texas Legislature. *See Ed Rachal*, 207 S.W.3d at 333; *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 273 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Mayfield*, 970 S.W.2d at 188.

Absent a finding of alter ego, we conclude that the trial court erred in finding that the Saadats were personally liable on Naifeh's *Sabine Pilot* claim. We sustain the Saadats' first issue. We need not reach the Saadats' other two issues, which challenge the validity of a *Sabine Pilot* claim in these circumstances on other grounds. We reverse the trial court's judgment against the Saadats and render judgment that Naifeh take nothing against them.

J. HARVEY HUDSON, Senior Justice, dissenting.

---

6. We note that the Saadats may have been subject to individual liability under Texas law pursuant to more traditional legal theories. However, for reasons that are unclear, Naifeh

chose to pursue their individual liability only under a *Sabine Pilot* theory.

7. Indeed, Naifeh actually has a judgment against Physio.

Does the *Sabine Pilot*[1] exception to the "employment-at-will doctrine" extend to an individual defendant who is not the employer of the plaintiff? In other words, may an individual, who is not the employer of the plaintiff, be liable for wrongful discharge of the plaintiff under the *Sabine Pilot* doctrine? The majority answers negatively and supports its position with cogent arguments and authorities. However, as the majority acknowledges, this is an issue on which jurists have struggled and the states are divided. Unlike my colleagues, I find myself persuaded by a contrary rationale and opposing authorities.

The majority argues the Saadats could not logically be liable for wrongful termination because they had no authority to fire Naifeh. The majority concludes that *only* the employers, i.e., Physio GP, Inc. and Physio, Ltd., had the power to terminate Naifeh's employment. While the rationale has a logical allure, it rests on a legal fiction. In the real world, no one disputes the fact that Naifeh was fired by Tanja Saadat. Moreover, no one disputes the effectiveness of that termination. Only in the most abstract sense can it be said that Tanja did not fire Naifeh, and it is little comfort to her to now learn that Tanja had no intrinsic, individual authority to terminate her employment.

The majority's strongest argument, in my mind, is that the specter of individual liability could discourage corporate supervisors from terminating employees in legitimate situations. In the majority of cases, an employer is shielded by the employment-at-will doctrine. The doctrine does not stem from an inherent right of the employer, but from the absence of a contractual agreement regarding the period of employment. Thus, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all. *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998). By definition, the employment-at-will doctrine does not require an employer to be reasonable, or even careful, in making its termination decisions. *Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 609 (Tex.2002).

Further, I do not doubt that the employment-at-will doctrine is decidedly beneficial to economic efficiency. Nor do I dispute the notion that fear of unjustified litigation can cripple corporate productivity. However, the Texas Supreme Court recognized a common law exception to the employment-at-will doctrine in *Sabine Pilot* when a termination is based on an employee's refusal to do an unlawful act. The wisdom of that decision and its public policy ramifications are not at issue here. Having found such an exception, it is our duty, as in intermediate appellate court, to give it application where appropriate.

There are good reasons to believe a corporate employee may be liable in his or her individual capacity for wrongful termination. First, the tort is intensely personal. It is not based on negligence, but on intentional malice. In other words, the gravamen of wrongful termination is not found in some corporate mistake, but in the uniquely *human* passion of hatred, spite, meanness, and revenge. For example, the uncontroverted evidence in this case shows that Tanja asked Naifeh to participate in a massive insurance fraud scheme by signing patient records reflecting treatments and services that had never been administered. Naifeh refused, and she was fired.

The Saadats then set out on a campaign to destroy Naifeh's credibility and profes-

1. *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985).

sional reputation. The Saadats alleged that Naifeh was fired because she had performed unauthorized treatment on a patient's knee. The allegation was untrue, and the Saadats later admitted at a Texas Workforce Commission hearing that they had a copy of the prescription, authorized by the patient's physician, for treatment of the knee.

The day after Naifeh was fired, the Saadats filed a police report falsely alleging Naifeh had stolen documents. The Saadats also manufactured a fake "Confidentiality Agreement" (with Naifeh's forged signature) stating that "all information related to Physio['s] day-to-day operation in regards to patient information and billing shall be kept confidential[,] and I shall not share any of this information with any patient or any individual." Using the fabricated Confidentiality Agreement and false police report, the Saadats asserted claims against Naifeh for misappropriation of confidential and proprietary information and conspiracy to misappropriate confidential and proprietary information. They also filed a claim under the Texas Theft Liability Act.

The Saadats also created multiple false disciplinary records and submitted them to the Texas Workforce Commission in an attempt to prevent Naifeh from receiving unemployment benefits. Finally, the Saadats submitted multiple false disciplinary records to the Texas Physical Therapy Board in an effort to have Naifeh's professional license revoked.

The tort committed here is akin to assault, battery, false imprisonment, and other intentional torts. The conduct was purposely directed at Naifeh with the deliberate intention of inflicting an injury upon her. This is the very behavior *Sabine Pilot* was intended to prevent, and there is no Texas authority restricting liability solely to the corporate employer.

As the majority notes, other states have considered, with mixed results, whether the common law tort of wrongful discharge can expose a corporate employee to personal liability.[2] Some view wrongful dis-

---

**2.** Other jurisdictions take varied approaches to claims of individual liability for wrongful termination. At one end of the spectrum, California, Illinois, and Kansas do not recognize liability for wrongful-discharge claims against individual non-employers. *See Reno v. Baird,* 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333, 1334 (Cal.1998) (holding that supervisors may not be sued individually under California's Fair Employment and Housing Act, and stating that this holding "also applies to common law actions for wrongful discharge"); *Buckner v. Atl. Plant Maint., Inc.,* 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565, 569–70 (Ill.1998) (no personal liability for retaliatory discharge of subordinate for filing a workers' compensation claim); *Rebarchek v. Farmers Coop. Elevator,* 272 Kan. 546, 35 P.3d 892, 903–04 (Kan. 2001) (same). At the opposite end of the spectrum, Iowa, New Jersey, Pennsylvania, and West Virginia recognize the personal liability of individual non-employers for wrongful termination even when the individual acted within the course and scope of his or her employment in firing another employee. *See, e.g., Jasper v. H. Nizam, Inc.,* 764 N.W.2d 751, 777 (Iowa 2009) (holding that liability for the tort of wrongful discharge based on refusal to commit an unlawful act can extend to the corporate officers who authorized or directed the discharge); *Ballinger v. Del. River Port Auth.,* 172 N.J. 586, 800 A.2d 97, 110 (N.J. 2002) ("[A]n individual who personally participates in the tort of wrongful discharge may be held individually liable."); *Kamensky v. Roemer Indus., Inc.,* 1 Pa. D. & C.4th 497, 499–500 (1988) (president of employer corporation is subject to personal liability for terminating a reinstated worker's employment for failure to withdraw an unemployment compensation claim); *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692, 698 (W.Va.1982) ("The discharge serves to fix responsibility on the employer but this does not mean that another employee who has been the principal protagonist in obtaining the employee's discharge would not also be

charge as any other tort and impose individual liability on employees for their own tortious conduct.[3] Others have reasoned that the tort can only be committed by the person or legal entity that employed the terminated employee.[4] "These courts reason that an individual officer or employee of a corporation cannot commit the tort of wrongful discharge because an individual officer or employee has no authority separate from the authority exercised on behalf of the corporation to discharge an employee of the corporation." *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 775 (Iowa 2009). Thus, they reason that "the existence of an employment contract is ... the most fundamental prerequisite to a claim of wrongful discharge." *Bourque v. Town of Bow*, 736 F.Supp. 398, 401 (D.N.H.1990). Accordingly, these courts hold that "wrongful discharge is a corporate tort within a corporate setting, not an individual tort." *Jasper*, 764 N.W.2d at 776.

In Texas, however, the common law tort of wrongful discharge is not derived from principles of contract law; neither does it spring from a contract of employment. If the employee's termination violates some contractual provision, he can sue for its breach. It is precisely because an "at-will" employee is not protected from a "bad cause" termination; because he has no contractual protections; and because public policy seeks to discourage criminal acts, that *Sabine Pilot* created a narrow exception to the employment-at-will doctrine. Further, it is the general rule in Texas that a corporation's employee is personally liable for tortious acts which he directs or participates in during his employment. *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex.App.-Dallas 2007, no pet.).

A corporate shareholder or director, for example, who wrongfully terminates an employee is liable for tortious interference with the corporation's employment contracts if the action is willful, intentional, and advances the interest of the actor rather than the interests of the corporation. *See Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995). Here, the evidence and the reasonable inferences there from would be sufficient to establish that Tanja's actions were willful and intentional, that although it was not in Physio's interest to terminate Naifeh for refusing to commit a criminal act, Tanja acted in her

---

liable."). Other jurisdictions consider whether the "principal protagonist" acted within the course and scope of his own employment when wrongfully discharging another employee. For example, the Mississippi Supreme Court has held that an individual is not liable for his actions in wrongfully discharging an employee if the individual acted within the course and scope of his employment, but it has not addressed the question of whether an individual should be held *liable* for wrongful termination if he acted outside his employment duties or contrary to the employer's interests. *See DeCarlo v. Bonus Stores, Inc.*, 989 So.2d 351, 358–59 (Miss.2008) (en banc); *see also Bourgeois v. Horizon Healthcare Corp.*, 117 N.M. 434, 872 P.2d 852, 855–56 (N.M.1994) (leaving open "the question of whether a retaliatory discharge claim lies against a supervisor, agent, or coemployee if the firing was an intentional act done solely for the supervisor, agent or coemployee's own interest and therefore outside the scope of employment").

3. *See DeCarlo v. Bonus Stores, Inc.*, 512 F.3d 173, 176–77 (5th Cir.2007) (collecting cases); *Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, 173 P.3d 453, 458 (Ariz.Ct.App.2007); *Ballinger*, 800 A.2d at 110–11; *Harless*, 289 S.E.2d at 698–99.

4. *See Hooper v. North Carolina*, 379 F.Supp.2d 804, 814–15 (M.D.N.C.2005) (North Carolina law); *Miklosy v. Regents of the Univ. of Cal.*, 44 Cal.4th 876, 80 Cal. Rptr.3d 690, 188 P.3d 629, 644–45 (Cal. 2008); *Reno*, 76 Cal.Rptr.2d 499, 957 P.2d at 1347; *Buckner*, 230 Ill.Dec. 596, 694 N.E.2d at 569–70; *Rebarchek*, 35 P.3d at 904.

own interests in doing so.[5]

In my view, the public policy considerations raised in *Sabine Pilot*, i.e., to relieve "at-will" employees from being pressured to commit criminal acts, would rationally apply to both the employer and its agents. The pressure exerted against Naifeh to falsify records was no less intimidating because it was asserted by a fellow employee. Tanja had the power to terminate Naifeh and did so because she would not become a party to a criminal enterprise. Her conduct constitutes the very essence of the common law tort created by *Sabine Pilot*.

Accordingly, I respectfully dissent.

---

5. Although no question of whether Tanja's conduct was itself criminal is at issue in this civil case, the difference between Tanja's interests and Physio's interests is easily seen when one considers separately the risks and benefits to each arising from Tanja's conduct in (a) altering the documents, and in (b) asking Naifeh to sign the altered documents and in terminating her for refusing to do so. It was conceivably in Physio's financial interests to inflate its bills, and thus, one could make a colorable argument that by altering records used to support its billing practices, Tanja was acting in Physio's best interests. But because a person who makes false statements in connection with the delivery of or payment for health care services can face imprisonment for up to five years, the person who makes such a statement has a personal stake, distinct from that of a corporate employer, in avoiding detection. A reasonable factfinder therefore could conclude that in asking Naifeh to sign the patient records, Tanja was acting in her own interest to conceal the fact that the documents had been altered, so that if it were discovered that insurers were billed by Physio for services that were not performed, it would appear that Naifeh and not Tanja was responsible.