**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2100**

ANGELA VANBUREN,

        Plaintiff - Appellant,

    v.

STEPHEN A. GRUBB,

        Defendant – Appellee,

    and

VIRGINIA HIGHLANDS ORTHOPAEDIC SPINE CENTER, LLC,

        Defendant.

**No. 10-2161**

ANGELA VANBUREN,

        Plaintiff - Appellee,

    v.

STEPHEN A. GRUBB,

        Defendant – Appellant,

    and

VIRGINIA HIGHLANDS ORTHOPAEDIC SPINE CENTER, LLC,

        Defendant.

Appeals from the United States District Court for the Western District of Virginia, at Roanoke.  James C. Turk, Senior District Judge.  (7:10-cv-00132-jct)

Argued:  December 8, 2011                    Decided:  March 1, 2012

Before NIEMEYER, MOTZ, and FLOYD, Circuit Judges.

Unpublished Order of Certification to the Supreme Court of Virginia.  Judge Floyd directed entry of the order with the concurrences of Judge Niemeyer and Judge Motz.

James J. O'Keeffe, IV, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellant/Cross-Appellee.  Terry Neill Grimes, GRIMES & WILLIAMS, P.C., Roanoke, Virginia, for Appellee/Cross-Appellant.

---

ORDER

---

FLOYD, Circuit Judge:

## I.  Question Certified

The United States Court of Appeals for the Fourth Circuit, exercising the privilege afforded it by the Supreme Court of Virginia through its Rule 5:40 to certify questions of law to the Supreme Court of Virginia when a question of Virginia law is determinative in a pending action and there is no controlling Virginia precedent on point, requests the Supreme Court of Virginia to exercise its discretion to answer the following question:

> 1.  Does Virginia law recognize a common law tort claim of wrongful discharge in violation of established public policy against an individual who was not the plaintiff's actual employer, such as a supervisor or manager, but who participated in the wrongful firing of the plaintiff?

We acknowledge that the Supreme Court of Virginia may restate this question.  See Va. Sup. Ct. R. 5:40(d).

## II.  Nature of the Controversy and Statement of Relevant Facts

### A.

This appeal arises from the district court's order granting a motion to dismiss.  In reviewing such an order, we accept as

3

true the factual allegations set forth in the complaint and draw all reasonable inferences from them in the nonmovant's favor. See CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 51 (4th Cir. 2011). These allegations provide as follows.

Virginia Highlands Orthopaedic Spine Center, LLC (Virginia Highlands), a Virginia limited liability company, employed Angela VanBuren as a registered nurse. Dr. Stephen A. Grubb was the owner and medical director of Virginia Highlands.[1] VanBuren served as his first-assist spine specialty nurse. As such, she worked under and reported directly to Dr. Grubb, who, at all relevant times, was her supervisor.

VanBuren commenced employment at Virginia Highlands on December 1, 2003. No more than ten days passed before Dr. Grubb, who was married to another woman, began sexually harassing VanBuren. Broadly speaking, this sexual harassment included unwelcome contact, fondling, and touching. Over VanBuren's protests, Dr. Grubb would hug her; rub her back, waist, breasts, and other inappropriate areas; and attempt to

---

[1] We note that VanBuren's complaint does not specify whether Virginia Highlands is a member-managed or manager-managed limited liability company. Consequently, we do not know Dr. Grubb's exact role in the limited liability company—that is, whether he was a manager in a manager-managed limited liability company or a member in a member-managed limited liability company. Instead, we know only that Virginia Highlands is a limited liability company owned by Dr. Grubb and that he served as its medical director and the supervisor to VanBuren.

4

kiss her.  He also professed his love for her and even penned a number of love poems for her.

On a number of occasions, after VanBuren and Dr. Grubb had worked long hours, he waited for her outside of the women's locker room at Virginia Highlands.  She lingered in the locker room out of hope that he would lose interest and leave.  But he paced outside of the locker room until she emerged, at which time he attempted to hug, fondle, and kiss her.

These actions did not escape the attention of VanBuren's coworkers.  His pacing outside of the women's locker room aroused their suspicions.  One coworker, concerned with Dr. Grubb's behavior, began walking VanBuren to her car to help her avoid his advances.

In May 2006, VanBuren and other coworkers traveled with Dr. Grubb to Radford, Virginia, to assist in setting up a new office and stayed in a local hotel.  One evening Dr. Grubb insisted that he walk VanBuren back to her hotel room, despite her protests.  When they arrived at VanBuren's room, he pushed his way inside and proceeded to rub her waist, breasts, and hair, and to profess his love for her.  He tried to pull her into his lap, at which time VanBuren, who was initially stiff with shock, freed herself from him.  She reminded him he was married, informed him she would not have sex with him, and demanded he leave.  He did not comply until she began to raise her voice.

5

At all times, VanBuren made clear to Dr. Grubb that she did not welcome his advances. Each time Dr. Grubb made a physical advance, VanBuren pulled away from him, demanded that he cease, and reminded him that he was married. Dr. Grubb's response on one occasion was that he "maybe . . . got a little carried away and she may have to tell him to take a cold shower sometimes." VanBuren approached him several times and requested that he quit his advances, informing him that his conduct was offensive and unwelcome. She pointed out that other employees noticed his behavior and were gossiping that they were having an affair. Dr. Grubb's response was that he did not care what other people thought.

Dr. Grubb's harassment continued even after VanBuren married her husband in December 2007. Dr. Grubb sought to take advantage of opportunities to console VanBuren about marital problems. But the consoling simply involved encouraging VanBuren to leave her husband and hugging, kissing, and groping her. VanBuren continued to resist these efforts and to inform him that his advances were unwelcome.

The situation culminated on March 19, 2008, when Dr. Grubb demanded that VanBuren meet with him in his office behind closed doors. The conversation began with Dr. Grubb expressing concern over VanBuren's marriage and suggesting that leaving her husband

6

would be in her best interest.  Once again, he made advances, attempting to hug and kiss her while telling her he loved her.

Six days later, Dr. Grubb called VanBuren back into his office and asked if she planned to stay with her husband.  When she answered affirmatively, he fired her without explanation.  To entice her to remain mum about the harassment, he offered her five weeks of severance pay.

B.

VanBuren instituted this action in federal court on March 25, 2010.  She named two defendants in her complaint—Dr. Grubb and Virginia Highlands.  VanBuren asserted two causes of action against Virginia Highlands—a Title VII claim and a state tort law claim of wrongful discharge.  Her only claim against Dr. Grubb asserted wrongful discharge.  VanBuren's wrongful-discharge claims against Virginia Highlands and Dr. Grubb alleged that she was discharged in violation of established public policy.  Specifically, she asserted that she was terminated because she refused to engage in criminal conduct—namely, adultery, as proscribed in Va. Code Ann. § 18.2-365, and open and gross lewdness and lasciviousness, as proscribed in Va. Code Ann. § 18.2-345.

Virginia Highlands and Dr. Grubb moved to dismiss VanBuren's claims for failure to state a claim.  The district

7

court, exercising federal-question jurisdiction over the Title VII claim and supplemental jurisdiction over the wrongful-discharge claims, granted the motion to dismiss in part and denied it in part. It granted the motion as to the wrongful-discharge claim against Dr. Grubb. In doing so, it held that the Virginia Supreme Court, although not having addressed the issue, likely would allow wrongful-discharge claims only against employers, not supervisors or other co-employees. Consequently, the district court dismissed Dr. Grubb as a defendant. It declined, however, to dismiss the claims against Virginia Highlands.

Pursuant to Federal Rule of Civil Procedure 54(b), VanBuren subsequently moved for the district court to enter final judgment as to Dr. Grubb, which would allow her to immediately appeal its order dismissing him as a party. After conducting a hearing on the matter, the district court granted the motion. It determined that its order dismissing all claims against Dr. Grubb was final as to him and that no just reason to delay the entry of final judgment existed. This appeal followed.[2]

---

[2] Dr. Grubb challenges our appellate jurisdiction, asserting that the district court erred in directing entry of final judgment pursuant to Rule 54(b). We review the district court's certification of its order as constituting a final judgment for abuse of discretion. MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 855 (4th Cir. 2010). We will not belabor this point, for the district court plainly directed (Continued)

8

III.  Legal Discussion and Relevant Virginia Case Law

A.  Common Law Tort Claim of Wrongful Discharge
in Violation of Public Policy

Virginia is an employment-at-will state.  See Miller v. SEVAMP, Inc., 362 S.E.2d 915, 916-17 (Va. 1987).  As such, when an employment contract in Virginia does not provide for the duration of the employment relationship expressly or by fair inference, either party ordinarily is free to terminate the relationship for any reason or for no reason at all, provided that it gives the other party reasonable notice.  See id. at 917.  That rule, however, "is not absolute."  Bowman v. State Bank of Keysville, 331 S.E.2d 797, 801 (Va. 1985).  There are "recognized exceptions to the rule of terminability."  Id.

One of those recognized exceptions, which the Supreme Court of Virginia recognized in Bowman, involves wrongful discharge in violation of established public policy.  Miller, 362 S.E.2d at 918.  The plaintiffs in Bowman were two employees of a bank.

---

entry of final judgment pursuant to a valid exercise of its discretion.  This situation falls within the purview of Rule 54(b) in that it involves multiple parties.  See Fed. R. Civ. P. 54(b).  The district court properly followed the two-step inquiry that we have outlined for determining whether to certify a final judgment under Rule 54(b) when it determined that (1) the judgment as to Dr. Grubb was final and (2) there was no just reason for delay.  See Braswell Shipyards, Inc. v. Beazer E., Inc., 2 F.3d 1331, 1335 (4th Cir. 1993).  Its determinations were sound and abided by the appropriate legal standards.  We therefore are satisfied that we possess appellate jurisdiction.

331 S.E.2d at 798-99. Aside from their status as employees, they also held common stock in the bank corporation. Id. at 799. They alleged that the bank's president, who served on the board of directors, warned them that they would be fired if they did not vote their shares in favor of a hotly contested proposed merger and the merger failed. Id. The plaintiffs accordingly voted their shares in favor of the merger, which passed by a narrow margin, but they later wrote a letter to the bank's president asserting that their votes were illegally obtained and thus invalid. Id. Without their illegally obtained votes, they noted, the merger would not have passed. Id. The bank's board of directors subsequently voted to abandon the merger. Id. It also voted to discharge the plaintiffs. Id. The plaintiffs brought suit against the bank, the vice president of the company with which the bank would have merged, and certain individual directors for, among other things, wrongful discharge. Id. at 800. The trial court sustained the defendants' demurrers upon the filing of motions for judgment. Id. at 798.

The Supreme Court of Virginia, although acknowledging that Virginia is traditionally an employment-at-will state, id. at 800, held that "the plaintiffs . . . stated a cause of action in tort against the Bank and the named directors for improper discharge from employment," id. at 801. One of the narrow exceptions to the employment-at-will doctrine, it determined,

10

involves situations in which employees are "discharged in violation of an established public policy." Id. The court decided that the plaintiff's discharge fit within this exception. Id. The established public policy derived from a statute that guaranteed the right to one vote for each outstanding share of stock, which, the court observed, necessarily involved the right to exercise that vote "free of duress and intimidation imposed on individual stockholders by corporate management." Id. The court announced, "Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation." Id. Accordingly, the court allowed the plaintiffs' cause of action against the bank and the individual directors to proceed. Id.

Since deciding Bowman, the Supreme Court of Virginia "has consistently characterized [this] exception[] [to the employment-at-will doctrine] as 'narrow.'" City of Virginia Beach v. Harris, 523 S.E.2d 239, 245 (Va. 2000). It therefore has recognized cognizable claims of wrongful discharge in violation of public policy in only three circumstances. Rowan v. Tractor Supply Co., 559 S.E.2d 709, 711 (Va. 2002). One of those recognized circumstances—the one that is relevant to this

11

case—involves instances "where the discharge was based on the employee's refusal to engage in a criminal act." Id. The Supreme Court of Virginia recognized that an employee's discharge for such a reason could give rise to a viable wrongful-discharge claim in Mitchem v. Counts, 523 S.E.2d 246 (Va. 2000).

In Mitchem, an employee alleged that her employer—an insurance agent—sexually harassed her by massaging her shoulders, patting her buttocks, trying to pull her into his lap and kiss her, and otherwise touching her against her will. Id. at 248. The employee maintained that her employer fired her after she spurned his advances and refused to engage in a sexual relationship with him. Id. She brought a wrongful-discharge claim against him, alleging, among other things, that her discharge violated the public policy underlying Virginia's criminal statutes proscribing fornication and lewd and lascivious cohabitation. Id. at 248-49. Because the employee would have violated these statutes if she had entered into the sexual relationship with her employer as he sought, the Supreme Court of Virginia determined that the employer violated established public policy when he fired her for refusing to engage in such a relationship. See id. at 252. As a result, it held that she stated a cognizable wrongful-discharge claim. See id.

After Mitchem, the Supreme Court of Virginia has generally recognized that discharging an employee for refusing to engage in criminal conduct can constitute the basis of a cognizable wrongful-discharge claim because, even though "criminal statutes do not contain explicit statements of public policy, the protection of the general public from lawless acts is an unquestioned policy underlying such statutes." Rowan, 559 S.E.2d at 711. "[A]llowing the employment-at-will doctrine to 'serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity' would violate this most compelling public policy." Id. (quoting Mitchem, 523 S.E.2d at 252).

VanBuren alleges that her discharge resulted from her refusal to submit to Dr. Grubb's persistent sexual advances. If she had done so, she maintains, she would have violated Virginia's statutes criminalizing adultery and lewd and lascivious cohabitation. See Va. Code Ann. §§ 18.2-345, -365. Accordingly, she submits that she was fired for refusing to engage in what would have been a criminal act and that her discharge thus violated Virginia's established public policy. Accepting VanBuren's allegations in her complaint as true and drawing all reasonable inferences from them in her favor, we are of the opinion she has adequately alleged that she was wrongfully discharged in violation of established public policy.

13

Her allegations are similar in many respects to the allegations in <u>Mitchem</u>, which the Supreme Court of Virginia determined to state a cognizable wrongful-discharge claim.  The district court correctly determined as much when it denied the motion to dismiss as to Virginia Highlands.

B.    Proper Defendants in a Claim for Wrongful Discharge
in Violation of Public Policy

This appeal presents the issue of whether such a claim for wrongful discharge in violation of established public policy is cognizable against an individual, such as a supervisor, manager, or other employee, who is not the employee's actual employer, but who nonetheless played a role in wrongfully terminating the employee.  The district court answered in the negative and therefore dismissed the claim against Dr. Grubb on that basis alone.  We are not so sure, however.

The Supreme Court of Virginia has not squarely addressed this issue.  The closest it came was in <u>Bowman</u>, in which it permitted the plaintiffs' wrongful-discharge claims to proceed against the individual bank directors, not just the bank.  331 S.E.2d at 801.  That aspect of the case suggests that the Supreme Court of Virginia does not believe wrongful-discharge claims are cognizable against only employers.  Yet we remain reticent to rely too much on <u>Bowman</u>, for the court did not

14

engage in any analysis concerning who may be liable for wrongful discharge in violation of established public policy. The issue on appeal in Bowman was whether Virginia recognized any exception to the employment-at-will doctrine for wrongful discharges that violate established public policy. In answering that question affirmatively, the Supreme Court of Virginia at most assumed, without explanation, that the individual directors could be liable. And, as a result, it provided no indication that such liability would extend beyond individual directors to individuals who serve in other capacities for an employer.

Moreover, we are hesitant to extrapolate too much from Bowman given the profound implications that could result in our determining that individuals who are not employers can be liable for wrongful discharge in violation of established public policy. Recognizing such claims against supervisors and other individuals who are not employers would open a new class of individuals to liability for their participation in wrongfully terminating an employee. It could also have implications on the use of the corporate structure in Virginia, as it would allow individual employees to be held personally liable under certain circumstances for termination decisions. Given these implications, we think this issue is one best decided by the Supreme Court of Virginia. See Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 97-98 (4th Cir. 2011) (noting that

15

federal courts "should act conservatively when asked to predict how a state court would proceed on a novel issue of state law").

Furthermore, as far as we can tell, no general consensus has arisen among Virginia's trial courts. VanBuren has submitted an order in which a Virginia trial court held that a wrongful-discharge claim could be asserted against a managing employee, not just the employer.[3] McClosky v. Warren Cnty. Dep't of Soc. Servs., Civil No. CL09000097-00, 2010 WL 7765600, at *1 (Va. Cir. Ct. July 15, 2010). This one decision, however, does not provide sufficient guidance on which we can base a decision.

Finally, we observe that states are split on this issue. See Jasper v. H. Nizam, Inc., 764 N.W.2d 751, 775 (Iowa 2009); Physio GP, Inc. v. Naifeh, 306 S.W.3d 886, 888-89 (Tex. App. 2010); Physio GP, 306 S.W.3d at 891 & n.2 (Hudson, J., dissenting) (collecting cases). "Those states that impose liability on an individual employee who participates in the tort of wrongful discharge essentially view wrongful discharge as any other tort within the existing rule that imposes individual

---

[3] A magistrate judge in the Eastern District of Virginia has reached a similar conclusion, holding that wrongful-discharge claims may "proceed against those officers or agents of a company who . . . played a key role in contributing to the company's tortious conduct allegedly inflicted on a wrongfully discharged plaintiff." McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C., 477 F. Supp. 2d 727, 739 (E.D. Va. 2007). Given that this decision conflicts with the district court's ruling below, we lack a consensus even among our lower courts.

liability on employees for their own tortious conduct."[4]  Jasper,
764 N.W.2d at 775.  One reason for this approach is that the
tort of wrongful discharge imposes liability based on the
wrongful reasons motivating the discharge, not the discharge
itself, meaning that individuals who are responsible for those
wrongful reasons, even if they are not the employer, should be
liable.  See id. at 776.  Another reason offered is that
individual liability "promotes deterrence and better decision
making because it allows the active wrongdoer to be held
directly responsible."  Physio GP, 306 S.W.3d at 888 (majority
opinion).

Courts that do not recognize wrongful-discharge claims
against individuals unless they are the actual employers
"conclude the tort can . . . be committed [only] by the person
or legal entity that employs the terminated employee."  Jasper,
764 N.W.2d at 775.  Their reasoning is based on the fact that
the employment relationship exists between the employee and the
employer, meaning that only the employer possesses the power to
fire an employee.  Physio GP, 306 S.W.3d at 888.  Because
employees do not have the power to fire another employee except
on behalf of the employer, they cannot be liable in their

---

[4] Virginia recognizes that "corporate officers [are] liable for their tortious conduct."  PTS Corp. v. Buckman, 561 S.E.2d 718, 723 (Va. 2002).

17

personal capacity for wrongful discharge, even if they are supervisors or owners. Id. at 888-89. Unlike states that allow individual liability for wrongful discharge, states that do not allow such liability contend that it is unnecessary for deterrence purposes because "liable employers will likely take their own measures to deter agents or employees from wrongfully exercising termination authority." Id. at 889. They have also noted the difficulty in limiting the number of individuals who could be liable for a wrongful-termination decision, "particularly . . . in a corporate environment involving group evaluation of employees and collective decisionmaking for terminations." Id.

We therefore find ourselves unable to predict with confidence how the Supreme Court of Virginia would rule on this question. As a result, we respectfully request that the Supreme Court of Virginia answer our certified question.


IV. Certified Question Determines This Proceeding

The certified question is determinative of the pending proceeding. If Virginia's common law tort claim of wrongful discharge in violation of public policy is cognizable against individuals such as Dr. Grubb, then the district court erred, and we will be compelled to reverse and remand. But if only employers can be liable for wrongful discharge in violation of

18

public policy, then the district court was correct, and we will affirm.

## V.   The Parties and Their Counsel

### A.

The Plaintiff-Appellant/Cross-Appellee is Angela VanBuren.

Counsel for the Plaintiff-Appellant/Cross-Appellee is:

James J. O'Keeffe, IV, VSB number 48620
     james_okeeffe@gentrylocke.com
Gentry, Locke, Rakes & Moore
10 Franklin Road, SE
P.O. Box 40013
Roanoke, VA 24022-0013
(540) 983-9459 (Telephone)
(540) 983-9400 (Facsimile)

### B.

The Defendant-Appellee/Cross-Appellant is Stephen A. Grubb.

Counsel for the Defendant-Appellee/Cross-Appellant is:

Terry Neill Grimes, VSB number 24127
     tgrimes@terryngrimes.com
Grimes & Williams, P.C.
320 Elm Avenue
Roanoke, VA 24016-4001
(540) 982-3711 (Telephone)
(540) 345-6572 (Facsimile)

C.

Another Defendant, who is not a party to this appeal, is Virginia Highlands Orthopaedic Spine Center, LLC. Counsel for this Defendant is:

Terry Neill Grimes, VSB number 24127
     tgrimes@terryngrimes.com
Grimes & Williams, P.C.
320 Elm Avenue
Roanoke, VA 24016-4001
(540) 982-3711 (Telephone)
(540) 345-6572 (Facsimile)


VI.    Conclusion

Pursuant to the privilege made available by Virginia Supreme Court Rule 5:40, we respectfully:

1) Certify the question stated in Part I of this Order of Certification to the Supreme Court of Virginia for resolution;

2) Order the Clerk of this Court to forward to the Supreme Court of Virginia, under the official seal of this Court, a copy of this Order of Certification, together with the original or copies of the record before this Court to the extent requested by the Supreme Court of Virginia; and

20

3) Order that any request for all or part of the record be fulfilled by the Clerk of this Court simply upon notification from the Clerk of the Supreme Court of Virginia.

QUESTION CERTIFIED

FOR THE COURT

/s/ Henry F. Floyd
